UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN DAVIS *et al.*,

      Plaintiffs,                         Case No. 13-cv-15187
                                            Hon. Matthew F. Leitman

v.

RICHLAND MAINTENANCE, INC.,

      Defendant.

_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## INTRODUCTION

Plaintiffs Sean Davis ("Davis"), Thomas Hemme ("Hemme"), Earl Hicks ("Hicks"), Gregory Keller ("Keller"), Matthew Stringham ("M. Stringham"), and Timothy Stringham ("T. Stringham") (collectively "Plaintiffs") have brought this action under the Fair Labor Standards Act, 29 U.S.C. § 701 *et seq.* (the "FLSA"), against their employer (or former employer), Defendant Richland Maintenance, Inc. ("Richland"). Plaintiffs seek unpaid overtime wages. Richland admits that it failed to pay the Plaintiffs certain overtime wages to which they were entitled. The parties dispute only the *amount* of these unpaid wages. On June 9-10, 2015, the Court conducted a bench trial during which the parties presented proofs on the amount-of-overtime issue. The parties subsequently submitted post-trial briefs and proposed findings of fact and conclusions of law. Based on the evidence presented

at the bench trial, the parties' arguments, and pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court makes the findings of fact and conclusions of law set forth below.

## THE FLSA FRAMEWORK

1.      The FLSA provides, in pertinent part, that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [40 hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

2.      The FLSA further requires employers to "make, keep, and preserve [] records of the persons employed by him and of the wages, hours, and other conditions and practices of employments maintained by him, and shall preserve such records . . . ."  29 U.S.C. § 211(c).  Employers must document, among other things, (1) the total hours worked by an employee each workday and each workweek; (2) the regular hourly rate of pay if overtime is worked and overtime compensation is due; (3) the basis on which wages are paid; (4) the total daily or weekly earnings or wages due for hours worked during the workday or workweek; (5) the total wages paid each pay period; and (6) the date of payment and the pay period covered by that payment.  *See* 29 C.F.R. § 516.2(a).

2

3.      An employer who fails to pay overtime owing under the FLSA may be held civilly liable for, among other things, back pay and liquidated damages. *See Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 516 (2014).

4.      In the event of a dispute between an employee and employer concerning allegedly-unpaid overtime wages, the employee seeking such wages has "the burden of proving that [he] performed work for which [he was] not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946) (superseded by statute on other grounds).

5.      "Often, the [employee] can prove his or her 'under-compensation' damages through discovery and analysis of the employer's code-mandated records. However, if the employer kept inaccurate or inadequate records, the employee's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) (citing *Mt Clemens Pottery Co.*, 328 U.S. at 687-88).  An employee may satisfy this "relaxed burden" by offering "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens Pottery,* 328 U.S. at 687-88.  The Court has applied this framework below in order to determine the number of overtime hours worked by each of the Plaintiffs.

## FINDINGS OF FACT

**A.     Richland Maintenance, Inc.**

6.     Richland provides floor care and cleaning services to commercial retail stores and businesses.  It is located in Westland, Michigan.

7.     Richland's president is William Ostlund ("Ostlund").

8.     Richland frequently provides its services to retail stores and businesses that are located within a 30-minute drive from its location in Westland. However, some of Richland's clients are located more than thirty minutes away from Westland – in cities such as Flint, Lansing, and Port Huron.  In addition, Richland has provided its services on occasion to out-of-state clients located in Ohio and Indiana.

9.     Richland divides its employees into two "crews": the "strip crew" and the "service crew."

10.     Strip crew members wax and clean a customer's floor.  They typically work in a single location per shift and generally do not travel between customer locations during their shifts.  Plaintiffs Hicks, Keller, and M. Stringham worked primarily on the strip crew (collectively, the "Strip Crew Plaintiffs").

11.     During the relevant time frame, the Strip Crew Plaintiffs filled out reports listing the time at which they entered Richland's facility at the beginning of their shifts and the time they exited Richland's facility at the conclusion of their

shifts (hereinafter the "Strip Crew Time Sheets"). (*See generally* Def.'s Trial Ex. F; *see also* Trial Tr., ECF #36 at 159-60, Pg. ID 373-74.)[1]

12.    In theory, the Strip Crew Time Sheets should have captured all of the hours worked by the Strip Crew Plaintiffs. Indeed, some of the Strip Crew Plaintiffs confirmed that the Strip Crew Time Sheets accurately reflected their work hours. (*See* Trial Tr., ECF #36 at 55-56, 77, 93, Pg. ID 269-70, 291, 307.) However, as Ostlund admitted at trial, there were at least some days for which the Strip Crew Time Sheets did not fully and accurately reflect the hours the Strip Crew Plaintiffs actually worked. (*See, e.g.*, *id.* at 189, Pg. ID 403.)

13.    Service crew members perform various cleaning services at customer locations. Plaintiffs Davis, Hemme, and T. Stringham worked primarily on the service crew (collectively, the "Service Crew Plaintiffs").

14.    The Service Crew Plaintiffs typically performed their work at between one to four customer locations per shift, and they traveled between the customer locations during their shifts. At times, the Service Crew Plaintiffs would finish cleaning one location before the next location was ready to be cleaned. This resulted in "down time" during which the Service Crew Plaintiffs could not

---

[1] The Court provides selected supporting citations for convenience and as examples of material in the record that support a particular finding. By giving a specific citation, the Court does not mean to imply that the cited evidence is the sole support in the record for a particular finding. All of the Court's findings, whether followed by a specific citation or not, are based upon the totality of the evidence presented at the bench trial.

perform work.   During the "down time," the Service Crew Plaintiffs were not permitted to pursue personal activities or personal matters.  Thus, the "down time" was part of the work shift for the Service Crew Plaintiffs.

15.   Like the Strip Crew Plaintiffs, the Service Crew Plaintiffs completed time sheets that contained information concerning the hours they worked (hereinafter the "Service Crew Time Sheets").  (*See id.* at 159-60, Pg. ID 373-74.) However, unlike the Strip Crew Time Sheets, the Service Crew Time Sheets did not purport to reflect all of the time worked by a Service Crew Plaintiff on a given day or week.  Instead, the Service Crew Time Sheets specifically identified only the amount of time the service crew members spent working inside of the customers' facilities.

16.   Until July 2007, Richland compensated both its strip crew members and service crew members at an hourly rate.   At that time, Ostlund began considering whether to pay the strip crew members and service crew members on a "per-store" basis – i.e., to pay them a set amount for each customer location that they serviced on a given shift irrespective of the number of hours actually worked.

17.   Before deciding to change Richland's payment model, Ostlund contacted a state government agency that he believed to be the Michigan Board of Labor (the "Board") to ask whether it was legal to compensate his employees on a

per-store basis rather than at an hourly rate.[2]   Ostlund asked the Board about switching to a per-store payment system because he wanted to make sure he was following the law.  (Trial Tr., ECF #36 at 201-02, Pg. ID. 415-16.)  Ostlund did not ask an attorney about Richland's switch to the per-store payment system because he believed that the representative of the Board with whom he spoke was the right person to answer his questions. (*See id.* at 203, Pg. ID 417.)

18.   When Ostlund spoke with the Board, he did not use the word "overtime," but he did tell the Board how many hours Richland's employees would be working each week.[3]   (*See id.* at 201-02, Pg. ID. 415-16.)   The Board told Ostlund that Richland *could* lawfully pay its employees on a per-store basis.[4]  And

---

[2] The Court is not certain whether there actually is a Michigan state agency known as the "Board of Labor."  However, there is no dispute that – and the Court finds as a matter of fact that – Ostlund did contact a state agency that addressed employment issues.  For ease of reference, the Court refers to this state agency as the "Board."

[3] Plaintiffs attempted to impeach Ostlund on this point with his deposition testimony in which he testified that he did not believe that he told the Board the number of hours that his employees would be working each week.  (*See* Trial Tr., ECF #36 at 202, Pg. ID 416.)  However, the Court finds Ostlund's trial testimony – that he did tell the Board about the number of weekly hours worked – to be credible.

[4] Plaintiffs argue that the record contains no admissible evidence of what the Board told Ostlund.  (*See* Pls.' Br., ECF #38 at 14, Pg. ID 503.)  That is incorrect.  Plaintiffs objected to Ostlund's testimony on this point at trial, and the Court overruled the objection.  (*See* Trial Tr., ECF #36 at 137, Pg. ID 351.)  Plaintiffs contended that the testimony was hearsay, but Richland did not offer the testimony for the truth of the matter asserted.  Indeed, Richland offered the testimony to show Ostlund's state of mind – i.e., that he had a good faith belief that Richland's

even though Ostlund told the Board how many hours Richland's employees would be working each week, the Board never advised Ostlund that if Richland switched to a per-store payment system, it would also be required to pay overtime to each employee who worked over forty hours per week.

19.     Before Richland switched to the per-store payment system, Ostlund also spoke with other contractors who were in the same field as Richland.  They told him that they paid their employees on a per-store basis and were not paying their employees on an hourly basis.  In addition, Ostlund spoke to his business partner who had previously worked as an auto mechanic, and the partner told Ostund that he had been paid on a per-store basis and did not receive overtime under that system.  (*See id.* at 139, Pg. ID 353.)

20.     In late July or early August 2007, after Ostlund spoke with the Board, fellow contractors, and his business partner, Richland began compensating service crew members who worked the night shift (i.e., employees who began working in the evening and completed their shifts the following morning) on a per-store basis. Under this compensation system, service crew members who worked more than 40 hours per week during the night shift did not receive any compensation for the overtime hours they worked (i.e., the hours they worked in excess of 40 per week)

---

payment system complied with the FLSA – not to prove the truth of the proposition that the payment system did, in fact, comply with the FLSA. Accordingly, the testimony was not hearsay. *See* Fed. R. Evid. 801(c)(2).

21.     In 2010, Richland also began compensating strip crew members who worked the night shift on a per-store basis.  Under this compensation system, the strip crew members who worked more than 40 hours per week during the night shift did not receive any compensation for the overtime hours they worked (i.e., the hours they worked in excess of 40 per week).

22.     Both the Strip Crew Plaintiffs and the Service Crew Plaintiffs were among the employees who did not receive any compensation for their overtime hours during these time periods.

23.     Even after Richland began compensating the strip crew members and the service crew members who worked the night shift on a per-store basis, those employees continued to complete Strip Crew Time Sheets and Service Crew Time Sheets, respectively.

24.     Richland does not dispute that the Strip Crew Plaintiffs and the Service Crew Plaintiffs are entitled to some amount of overtime compensation for the excess hours they worked while being compensated on a per-store basis.  It is the amount of this overtime compensation that remains in dispute.

**B.     The Strip Crew Plaintiffs' Unpaid Overtime Hours**

**1.     Method of Determining Overtime Hours Worked by the Strip Crew Plaintiffs**

25.     Because Richland did not maintain complete and accurate copies of the wage and hours records required by the FLSA and its implementing

9

regulations, the Court holds the Strip Crew Plaintiffs to a "relaxed burden" with respect to establishing the number of overtime hours they worked.

26.   At trial, the Strip Crew Plaintiffs offered their own testimony as evidence of the amount of overtime they worked.  Though their testimony varied somewhat, they generally testified (and now ask the Court to find as a matter of fact) that during the relevant time period they worked roughly 12 hours per day for five or six days each week, resulting in a total of approximately 66 hours worked by each Strip Crew Plaintiff each week (12 hours per day multiplied by 5.5 days per week).  (*See id.* at 47, 71, 86, Pg. ID 261, 285, 300; *see also* Proposed Findings of Fact and Conclusions of Law, ECF #40 at 29-31, Pg. ID 536-38.)  Accordingly, the Strip Crew Plaintiffs ask the Court to make a factual finding that they worked roughly 26 hours of overtime each week. (*Id.*)

27.   Notwithstanding the Strip Crew Plaintiffs' relaxed burden, the Court rejects the Strip Crew Plaintiffs' argument that their testimony is sufficient to establish the number of overtime hours they worked.

28.   The Court finds that even though the Strip Crew Time Sheets did not strictly comply with the FLSA's record-keeping requirements, they are nonetheless the best source of evidence concerning the number of hours worked by the Strip Crew Plaintiffs.  While the Strip Crew Time Sheets admittedly do not list each and every hour worked by the Strip Crew Plaintiffs on each and every shift, in the

aggregate those records present a fair and accurate (and contemporaneously recorded) picture of the average weekly hours worked by each Strip Crew Plaintiff. The Court finds that the Strip Crew Time Sheets present a more accurate picture of the overtime hours worked by the Strip Crew Plaintiffs than does their own testimony.

29.    Accordingly, the Court has made its findings below concerning the number of overtime hours worked by the Strip Crew Plaintiffs based upon the Strip Crew Time Sheets.[5]

### 2.    Earl Hicks

30.    Hicks was not compensated for his overtime hours worked between April 1, 2012 and September 15, 2013 (approximately 76 weeks).

31.    The Strip Crew Time Sheets establish that Hicks worked a total of 147.3 hours of overtime during that time period.

### 3.    Gregory Keller

32.    Keller was not compensated for his overtime hours worked between December 20, 2011[6] and September 15, 2013 (approximately 91 weeks).

---

[5] Richland's Supplemental Exhibit (ECF #41) lists the overtime hours for each Strip Crew Plaintiff as reflected on the Strip Crew Time Sheets. The Court utilized the figures from that Exhibit in its factual findings above.

[6] The Court has used the December 20, 2011, date as the starting point for calculating the Plaintiffs' overtime hours because (as described below) the Court applies a two-year statute of limitations to Plaintiffs' claims, and Plaintiffs filed their Complaint on December 20, 2013. (*See* ECF #1.)

33.    The Strip Crew Time Sheets establish that Keller worked 324.95 hours of overtime during that time period.

### 4.    Matthew Stringham

34.    M. Stringham was not compensated for his overtime hours worked between December 20, 2011 and September 15, 2013 (approximately 91 weeks).

35.    The Strip Crew Time Sheets establish that M. Stringham worked 167.9 hours of overtime during that time period.

### C.    The Service Crew Plaintiffs' Unpaid Overtime Hours

### 1.    Method of Determining Overtime Hours Worked by the Service Crew Plaintiffs

36.    Because Richland did not maintain complete and accurate copies of the wage and hours records required by the FLSA and its implementing regulations, the Court holds the Service Crew Plaintiffs to a "relaxed burden" with respect to establishing the number of overtime hours worked.

37.    At trial, the Service Crew Plaintiffs offered their own testimony as evidence of the amount of overtime they worked.  Although their testimony varied somewhat, the Service Crew Plaintiffs generally testified (and now ask the Court to find as a matter of fact) that during the relevant time period, they worked roughly 12 hours per day, five days each week, resulting in a total of 60 hours worked by each Service Crew Plaintiff each week.  (*See* Trial Tr., ECF #36 at 23-24, 98, 115, Pg. ID 237-38,312, 329; *see also* Proposed Finding of Fact and Conclusions of

12

Law, ECF #40 at 24, Pg. ID 531.)  Accordingly, the Service Crew Plaintiffs ask the Court to make a factual finding that they worked roughly 20 hours of overtime each week. (*Id.*)

38.    The Court concludes that – unlike the case with the Strip Crew Plaintiffs – the testimony of the Service Crew Plaintiffs is sufficient to satisfy their relaxed burden to prove the number of overtime hours they worked.

39.    Indeed, contrary to Richland's argument, the testimony of the Service Crew Plaintiffs is the best indicator of the number of overtime hours they worked – and is a much better indicator of those hours than are the Service Crew Time Sheets.  As described above, the Service Crew Time Sheets did not reflect all of the hours the Service Crew Plaintiffs actually worked.

40.    Richland acknowledges that the Service Crew Time Sheets do not reflect all of the hours worked by the Service Crew Plaintiffs, but it argues that the Court can accurately extrapolate the total hours worked from the hours that are reflected on the reports.  Richland has offered the Court a method for conducting this extrapolation,[7] but the Court finds that method unpersuasive and declines to

---

[7] Richland points out that the Service Crew Time Sheets reflect the time that the Service Crew Plaintiffs began cleaning their first location and finished cleaning their last location each day.  (*See* Def.'s Supp. Ex., ECF #41 at 2, Pg. ID 557.)  Richland thus contends that the Service Crew Time Sheets capture all of the time the Service Crew Plaintiffs spent working and traveling between jobs.   (*See id.*)  Richland contends that the only time not captured on the Service Crew Time Sheets is (1) the time that the Service Crew Plaintiffs spent traveling from

determine the number of overtime hours worked by the Service Crew Plaintiffs based on that method.

41.    Ostlund's own testimony makes clear that Richland's proposed method for using the Service Crew Time Sheets to calculate the overtime worked by the Service Crew Plaintiffs results in a substantial understatement of the overtime hours worked.  Under Richland's proposed method, the Service Crew Plaintiffs would be deemed to have worked between 1.17 and 6.56 hours of overtime per week.[8]  But Ostlund testified that the Service Crew Plaintiffs necessarily worked far more overtime hours.[9]

---

Richland's office to the first job site of the day and (2) the time those plaintiffs spent traveling back to Richland's office from the final job site of the day.  (*See* Def.'s Br., ECF #42 at 30, Pg. ID 636.)  Richland has estimated this missing travel time as 1.5 hours per day, and Richland has added that 1.5 hours to the hours captured on the Service Crew Time Sheets. (*See* Def.'s Supp. Ex., ECF #41 at 2, Pg. ID 557.)

[8]  The Court reached these averages using Richland's proposed overtime calculations for each Service Crew Plaintiff.   More specifically, Richland proffered that: (1) Davis worked 126.1 hours of overtime over 108 weeks, which yields an average of 1.17 hours of overtime per week (*see* Proposed Findings of Fact and Conclusions of Law, ECF #40 at 20-21, Pg. ID 527-28); (2) Hemme worked 420.9 hours of overtime over 108 weeks, which yields an average of 3.9 hours of overtime per week (*see id.* at 21, Pg. ID 528); and (3) T. Stringham worked 708.7 hours of overtime over 108 weeks, which yields an average of 6.56 hours of overtime per week (*see id.* at 19, Pg. ID 526).

[9]  Ostlund testified that the Service Crew Plaintiffs were in the field no less than *twelve* hours per day.  (*See* Trial Tr., ECF #36 at 170, Pg. ID 384.)  Even if, as Richland assumes, the Service Crew Plaintiffs took one hour for a meal break on their twelve-hour shifts (*see* Def.'s Supp. Ex., ECF #41 at 2, Pg. ID 557), they would have accrued eleven compensable hours per day.  That would amount to a

42.     Moreover, another component of Richland's proposed calculation is not supported by credible evidence in the record.  Richland's method calls for deducting one hour for a meal break on days that the Service Crew Plaintiffs worked more than nine hours per day and had more than two hours of down time between jobs.  (*See* Def.'s Supp. Ex., ECF #41 at 2, Pg. ID 557.)  Richland's calculation method assumes that on these days, the Service Crew Plaintiffs must have taken an uncompensated meal break.  But there is no credible evidence of such a break in the record.  Indeed, Service Crew Plaintiff T. Stringham testified that he did not take any time off during his twelve-hour days.  (*See* Trial Tr., ECF #36 at 27, Pg. ID 241.)

43.     Because Richland's calculation model cannot be squared with Ostlund's testimony and because it rests (in part) on an unsupported assumption concerning meal breaks, the Court declines to follow that model.

44.     In making the factual findings below, the Court has used the Service Crew Plaintiffs' own testimony to measure the overtime hours they worked each week.

---

total of 55 compensable hours per week and 15 overtime hours per week – far more than the overtime hours per week calculated under Richland's proposed method.

45.     The Court finds that during the relevant time period the Service Crew Plaintiffs worked 12 hours per day, five days per week – for a total of 60 hours per week and 20 hours of overtime per week.

### 2.     Sean Davis

46.     Davis was not compensated for his overtime hours worked between January 20, 2012 and September 15, 2013 (approximately 86 weeks).

47.     The Court finds that Davis worked 12 hours per shift, five days per week, for a total of 60 hours per week.

48.     The Court further finds that Davis worked 20 hours of overtime per week for 86 weeks.  Thus, Davis worked a total of 1,720 hours of unpaid overtime.

### 3.     Thomas Hemme

49.     Hemme was not compensated for his overtime hours worked between December 20, 2011 and August 15, 2013 (approximately 86 weeks).

50.     The Court finds that Hemme worked 12 hours per shift, five days per week, for a total of 60 hours per week.

51.     The Court further finds that Hemme worked 20 hours of overtime per week for 86 weeks.  Thus, Hemme worked 1,720 hours of unpaid overtime.

### 4.     Timothy Stringham

52.     T. Stringham was not compensated for his overtime hours worked between December 20, 2011 and September 15, 2013 (approximately 91 weeks).

53.     The Court finds that T. Stringham worked 12 hours per shift, 5 days per week for a total of 60 hours per week.

54.     The Court further finds that T. Stringham worked 20 hours of overtime per week for 91 weeks.  Thus, T. Stringham worked 1,820 hours of unpaid overtime.

### 5.      Earl Hicks

55.     Hicks worked on the service crew for a short period of time between December 20, 2011 and March 31, 2012 (approximately 15 weeks).  He was not compensated for his overtime hours during that period.

56.     The Court finds that while Hicks was on the service crew, he worked 12 hours per shift, 5 days per week for a total of 60 hours per week.

57.     The Court further finds that while Hicks was on the service crew, he worked 20 hours of overtime per week for 15 weeks.  Thus, Hicks worked 300 hours of unpaid overtime while on the service crew.

## CONCLUSIONS OF LAW

### A.      The Appropriate Rate of Plaintiffs' Overtime Pay and the Amount Still Owing for Each Overtime Hour Worked

1.      Under the applicable provision of the FLSA, an employee must be compensated for overtime hours (those in excess of 40 hours per week) "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

17

2.     The parties have stipulated that the regular rate of pay for each Plaintiff is $12.00 per hour.  (*See* Pls.' Br., ECF #38 at 9, Pg. ID 498; Def.'s Br., ECF #42 at 25, Pg. ID 631.)

3.     Thus, the appropriate rate for Plaintiffs' overtime pay is $18.00 per hour.

4.     Richland agrees that the appropriate *rate* of overtime pay is $18.00 per hour, but Richland contends that it actually owes the Plaintiffs only $6.00 per hour for each overtime hour worked.

5.     As support for the $6.00 per hour damages figure, Richland cites a federal regulation, 29 C.F.R. § 778.112, which provides:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums he received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

6.     This regulation does not support Richland's contention that the Plaintiffs are owed only $6.00 per hour.  First, the regulation addresses how to determine the "regular [hourly] rate" of an employee paid on a per-store basis *when there is a need to "determine" that figure*.  Here, the parties have *agreed* that the Plaintiffs' regular hourly rate is $12.00 per hour, so the method to "determine"

that rate set forth in the regulation is unnecessary, and the regulation is largely inapposite.

7.     Second, the statement in the regulation that the employee is entitled to "extra half-time pay" necessarily assumes that the employee *has already been paid his regular rate for the overtime hours worked*.   Indeed, it is only where the employer has already paid the employee his regular rate that payment of an additional one-half of that rate will bring the employer into compliance with the FLSA's requirement that it compensate overtime hours at one and one-half times the regular rate.   Here, however, Richland did not pay the Plaintiffs their regular rate for any of the overtime hours.   Thus, the regulation's provision for the payment of an additional one-half of the regular rate does not apply.

8.     Richland must pay Plaintiffs the full $18.00 for every hour of overtime they worked during the relevant time period.   The precise amount of overtime owed to each Plaintiff is listed in the "Total Damages" section below.

### B.     Liquidated Damages

9.     An employer who violates the FLSA "shall be liable to the [] employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."   29 U.S.C. § 216(b).   Liquidated damages "are compensation, not a

19

penalty or punishment." *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971) (quoting *Overnight Motor Co. v. Missel*, 316 U.S. 572, 583 (1942)).

10.     A federal court should decline to award liquidated damages only "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.  29 U.S.C. § 260.  The employer bears the burden of establishing that its "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 840 (6th Cir. 2002) (quoting *McClanahan*, 440 F.2d at 322).  This dual burden is "substantial." *Martin v. Indiana Michigan Power Co.,* 381 F.3d 574, 584 (6th Cir. 2004) (quoting *Elwell,* 276 F.3d at 840).

11.     To demonstrate good faith, an employer "must show that it honestly intended to ascertain the dictates of the FLSA and to act in conformance with it." *Thom v. American Standard, Inc.*, 666 F.3d 968, 977 (6th Cir. 2012).  The reasonableness requirement imposes an objective standard for evaluating an employer's conduct. *See Elwell*, 276 F.3d at 841 n.5; *see also Martin*, 381 F.3d at 586.

12.     The Court concludes that Richland has satisfied its substantial burden of showing that it acted reasonably and in good faith and, accordingly, that this is a case in which it would be unfair to award liquidated damages.

13.     Simply put, Ostlund (and by extension Richland) acted both reasonably and in good faith when he called the Board, told the Board representative the number of weekly hours that Richland's employees would be working and that Richland was considering switching to a per-store payment system, and obtained confirmation that the switch was lawful.  The Court credits Ostlund's testimony that he called the Board because he "wanted to make sure [he] was following the law." (Trial Tr., ECF #36 at 201, Pg. ID 415.)  Moreover, even though Ostlund did not specifically mention overtime issues, it was reasonable for him to expect – in light of the fact that he identified the number of hours Richland's employees worked per week – that the Board representative would have mentioned overtime requirements if they applied.  In addition, as part of his investigation into changing Richland's payment model, Ostlund also spoke with other contractors and his business partner, and these conversations provide further evidence of his attempted good-faith compliance with the FLSA.

14.     Ostlund's investigation was admittedly not perfect.  He could have been more explicit concerning overtime in his discussion with the Board, and he could have sought specific legal advice from an attorney about overtime

21

requirements.  But the Court has no doubt but that Ostlund made a good faith and reasonable effort to comply with the law and concludes that an award of liquidated damages under these circumstances would be inappropriate.

15.   Finally, Plaintiffs contend that Ostlund did not act in good faith because he refused to pay overtime even after two of the Plaintiffs requested to be paid overtime. (*See* Pls.' Br., ECF #38 at 9, Pg. ID 501.)  The Court disagrees. There is no evidence that any of the Plaintiffs suggested to Ostlund that Richland's failure to pay overtime violated the FLSA or was otherwise unlawful.  This mere inquiry by two of the Plaintiffs was thus insufficient to put Ostlund on notice that – contrary to his reasonable conclusion based upon his communications with the Board – Richland was in violation of the FLSA.

### C.   The Applicable Statute of Limitations

16.   FLSA claims generally are subject to a two-year statute of limitations. *See* 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 134 (1988) ("Ordinary violations of the FLSA are subject to the general 2-year statute of limitations.")  However, if an action arises out of an employer's willful violation of the FLSA, the applicable statute of limitations is three years.  *See* 29 U.S.C. § 255(a). A plaintiff bears the burden of showing a willful violation.  *Id.*; *see also Henry v. Quicken Loans Inc.*, No. 04-40346, 2009 WL 3199788, at *14 (E.D. Mich. Sept. 30, 2009).

17.     An employer willfully violates the FLSA if the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin*, 486 U.S. at 134.

18.     For the reasons explained above (at Conclusions of Law ¶¶ 9-15), the Court concludes that Richland neither knew nor recklessly disregarded that its failure to pay overtime to the employees paid on a per-store basis violated the FLSA.

19.     Accordingly, a two-year statute of limitations applies to Plaintiffs' claims.  Plaintiffs are entitled to overtime compensation beginning December 20, 2011 (two years before they filed their Complaint).

## TOTAL DAMAGES

20.     **Earl Hicks** worked 147.3 hours of unpaid overtime at a rate of $18.00 per hour for a total of $2,651.40 in unpaid wages for his work on the strip crew. Hicks also accrued 300 hours of unpaid overtime at a rate of $18.00 per hour for a total of $5,400.00 in unpaid wages for his work on the service crew. Thus, Hicks is entitled to **$8,051.40** in unpaid wages**.**

21.     **Gregory Keller** worked 324.95 hours of unpaid overtime at a rate of $18.00 per hour.  Thus, Keller is entitled to a total of **$5,849.10** in unpaid wages.

22.     **Matthew Stringham** worked 167.9 hours of unpaid overtime at a rate of $18.00 per hour.  Thus, M. Stringham is entitled to **$3,022.20** in unpaid wages.

23.    **Sean Davis** worked 1,720 hours of unpaid overtime at a rate of $18.00 per hour.  Thus, Davis is entitled to **$30,960.00** in unpaid wages.

24.    **Thomas Hemme** worked 1,720 hours of unpaid overtime at a rate of $18.00 per hour.  Thus, Hemme is entitled to **$30,960.00** in unpaid wages.

25.    **Timothy Stringham** worked 1,820 hours of unpaid overtime at a rate of $18.00 per hour.  Thus, T. Stringham is entitled to **$32,760.00** in unpaid wages.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  December 16, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 16, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

24